**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bank of the West, Inc., ) | No. CV-08-2220-PHX-FJM |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Organic Grain & Milling, Inc., ) | |
| ) | |
| Defendant. ) | |
| ) | |

The court has before it plaintiff's motion for summary judgment (doc. 30), defendant's response (doc. 32), and plaintiff's reply (doc. 35).

Plaintiff Bank of the West, Inc. (the "Bank") entered into a loan agreement with Desert Organics, LLC, to provide $3,000,000 in working capital for Desert Organics' farming business ("loan agreement"). In exchange, the Bank obtained a security interest in Desert Organics' crops and in the crop proceeds. At about the same time, Desert Organics entered into an "all outputs" contract with defendant Organic Grain and Milling, Inc., whereby Organic Grain agreed to purchase Desert Organics' entire 2008 durum wheat crop, including a crop in Dateland, Arizona (the "Dateland crop"), and a crop in Wilcox, Arizona (the "Wilcox crop"). Desert Organics subsequently defaulted on its obligations under the loan agreement, prompting the Bank to record its lien against Desert Organics' accounts

1 receivable, including receivables due from the sale of the Dateland crop. On September 30,
2 2008, the Bank filed an action against Desert Organics in state court seeking damages for
3 breach of contract in the amount of $3,037,054.60. On February 20, 2009, Desert Organics
4 filed for bankruptcy protection.

In the meantime, Dean Chapla of Organic Grain contacted the Bank, acknowledging the Bank's security interest in the Dateland crop proceeds and seeking the Bank's consent to pay the harvester and seed supplier out of the money payable to the Bank. To that end, on June 6, 2008, the Bank, Desert Organics and Organic Grain executed a document whereby the Bank agreed to subordinate its lien on the harvest proceeds and allow Organic Grain to pay the harvester and seed supplier a maximum of $72,000 out of the crop proceeds (hereinafter "June 6, 2008 letter"). The parties agreed that the remainder of the crop proceeds was to be paid directly to the Bank.

The total value of the harvested Dateland crop was $243,324.07. Therefore, the Bank expected payment from Organic Grain in an amount not less than $171,324.07. Instead, Organic Grain issued a check to the Bank in the amount of $46,915.32, asserting that it is entitled to an offset of $196,408.75 for losses it claims were the result of Desert Organics' failure to properly irrigate the Wilcox crop. The Bank then filed this action against Organic Grain alleging *inter alia* breach of contract, fraud, misrepresentation, and unjust enrichment. Organic Grain asserted counterclaims of breach of contract, intentional interference with contract, and recoupment under A.R.S. § 47-9404.

The Bank does not seek to enforce its lien against Organic Grain. Instead it contends that Organic Grain breached its obligation under the June 6, 2008 letter by failing to remit

1  the net Dateland harvest proceeds directly to the Bank.[1] Organic Grain counters that the June
2  6, 2008 letter is not an enforceable contract.

An enforceable contract requires an offer, acceptance, consideration, a specific statement of the parties' obligations, and mutual assent. Savoca Masonry Co. v. Homes & Son Constr. Co., 112 Ariz. 392, 394, 542 P.2d 817, 819 (1975). Consideration is a "performance or return promise" that is "bargained for . . . in exchange for the promise of the other party." Schade v. Diethrich, 158 Ariz. 1, 8, 760 P.2d 1050, 1057 (1988) (citing Restatement (Second) of Contracts § 71 (1981)). Any benefit to the promisor or detriment to the promisee is sufficient. Hill v. Chubb Life Am. Ins. Co., 182 Ariz. 158, 164, 894 P.2d 701, 707 (1995). There is a presumption that written promises are supported by consideration. See A.R.S. § 44-121 ("Every contract in writing imports a consideration."). The burden of showing lack of consideration is on the party attacking it. Lessner Dental Labs, Inc. v. Kidney, 16 Ariz. App. 159, 160, 492 P.2d 39, 40 (Ct. App. 1971).

Organic Grain had knowledge of the Bank's security interest in the Dateland crop proceeds, as well as the Bank's demand for direct payment. Accordingly, at the request of the harvester, Organic Grain solicited the Bank's written consent to allow it to pay the harvester and the seed supplier directly out of the harvest proceeds, money that was otherwise due to the Bank.[2] In exchange for the Bank's written consent, Organic Grain expressly acknowledged that the balance of the harvest proceeds "will then be remitted to the bank." PSOF, exhibit F. We reject Organic Grain's argument that it received no benefit

---

[1] Organic Grain contends that it is not subject to a lien because the Bank did not satisfy the notice requirements of the Food Security Act, 7 U.S.C. § 1631, which provides that a buyer of farm products takes free of a security interest unless specific statutory notice requirements are met. Because the Bank does not seek to enforce its lien, we need not consider whether the lien is enforceable against Organic Grain.

[2] Even if we assume that the Bank's lien is ineffective as against Organic Grain as a "purchaser of farm products," the Food Security Act does not limit the Bank's lien rights against the harvester and seed supplier. See 7 U.S.C. § 1631.

- 3 -

from this bargain. As the intended purchaser of the grain, it had an obvious interest in ensuring that the grain was harvested.

We conclude that the June 6, 2008 letter satisfies the requirements of an enforceable contract. Organic Grain breached its obligation under the contract by failing to remit the net harvest proceeds to the Bank as promised.

The Bank also moves for summary judgment on Organic Grain's counterclaims, which are based on the failure of Desert Organics to irrigate the Wilcox crop resulting in the loss of the crop. Organic Grain contends that the Bank, in "deviation . . . from normal and prudent agricultural financing practices," failed to extend funds to Desert Organics to irrigate the Wilcox crops. Counterclaim ¶ 5. There is no evidence, however, that the Bank had any obligation to provide additional funding to Desert Organics for any purpose. It had already advanced $2,998,000 on a $3 million line of credit, and Desert Organics was in payment default. PSOF ¶ 7. But even if the Bank had an obligation to extend additional funding, there is no evidence that anyone requested that the Bank provide extra funding for irrigation.

We also reject Organic Grain's counterclaim that the Bank is an "assignee" of Desert Organics pursuant to A.R.S. § 47-9404. The Bank was a lender, and as such had a secured interest in Desert Organics' crops and crop proceeds. A security interest in Desert Organics' assets does not make the Bank an "assignee" of Desert Organics' rights and obligations under the all outputs agreement with Organic Grain. Organic Grain's reliance on Indep. Nat'l Bank v. Westmoor Elec., Inc., 164 Ariz. 567, 570, 795 P.2d 210, 213 (Ct. App. 1990), is misplaced in that there the borrower expressly assigned its rights to the lender. There is no express assignment in the instant case. Organic Grain's claim for recoupment under § 47-9404 is without merit.

Finally, we reject Organic Grain's counterclaim for intentional interference with contractual relations. Organic Grain argues that the Bank "intentionally caused Desert Organics to fail to irrigate and deliver the crops at Wilcox, Arizona." Counterclaim ¶ 14. But Organic Grain has failed to demonstrate that the Bank had any legal or equitable obligation to provide additional funding for irrigation of the Wilcox crop and therefore the

Bank's failure to fund was not improper. See Safeway Ins. Co. v. Guerrero, 210 Ariz. 5, 10, 106 P.3d 1020, 1025 (2005) (holding that a defendant's interference must be improper).

Based on the foregoing, we conclude that Organic Grain breached its agreement to pay the Bank the total Dateland harvest proceeds, less the actual costs of harvesting and seed.

**IT IS ORDERED GRANTING** the Bank's motion for summary judgment on count 1 of the complaint and **GRANTING** the Bank's motion to dismiss all of Organic Grain's counterclaims (doc. 30).

DATED this 17th day of March, 2010.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge